Filed 3/23/16  P. v. Sihabouth CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MACKSION SIHABOUTH,<br><br>　　　　Defendant and Appellant. | C076143<br><br>(Super. Ct. No. 13F01336) |

After the trial court denied his suppression motion, defendant Macksion Sihabouth pleaded no contest to cultivating, harvesting, and processing marijuana.  (Health & Saf. Code, § 11358.)  His sole contention on appeal is that his motion to suppress was improperly denied.  (Pen. Code, § 1538.5.)  We affirm the judgment.

1

BACKGROUND

On February 27, 2013, Sacramento police officers executed a search warrant at 6412 Sunnyfield Way (Sunnyfield Way residence or the residence). In the course of the search, a police officer stopped a car driven by defendant; his codefendant David Nhan was a passenger in the car. Inside the trunk of defendant's car, the police officer found a "ballast" often used as "marijuana grow equipment."

At the Sunnyfield Way residence, officers found a marijuana growing operation that consisted of over 150 plants as well as instructions for the operation. Officers also found packing materials and over $2,700 in cash. Officers then read defendant his *Miranda*[1] rights, after which defendant told the officers the marijuana found at the Sunnyfield Way residence was his for personal use.

Defendant was arrested and charged with cultivating, harvesting, drying, and processing marijuana (Health & Saf. Code, § 11358) and possession of marijuana for sale (Health & Saf. Code, § 11359). Defendant pleaded not guilty to both charges. He subsequently filed a motion to suppress evidence obtained on February 27, 2013, including the ballast found in his trunk and statements he made to the officers, pursuant to Penal Code section 1538.5.

At the suppression hearing, the trial court considered the following evidence: Sacramento Police Officers Andy Hall and David Putnam were part of a team executing a search warrant on the Sunnyfield Way residence on February 27, 2013. The subject of the warrant was defendant's codefendant David Nhan. The warrant included the Sunnyfield Way residence, Nhan himself, and any vehicle under Nhan's control. The warrant directed officers to search for "marijuana and its related paraphernalia involved in its use, sales and transportation."

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

2

The officers arrived at the Sunnyfield Way residence at approximately 2:30 p.m. For the officers' safety, the plan was to wait for Nhan to leave the Sunnyfield Way residence before executing the warrant. Thus, Officer Putnam and several other officers positioned themselves around the residence and conducted surveillance, while Officer Hall sat in a marked patrol car parked away from the residence waiting to detain Nhan. Officer Hall was familiar with Nhan, having "dealt with him in the past"; he also knew Nhan was on probation.

At approximately 3:00 p.m. Officer Putnam saw Nhan leave the residence with a man, later identified as defendant. Defendant and Nhan got into a black Honda and defendant drove them away from the Sunnyfield Way residence. Officer Putnam alerted Officer Hall that Nhan had left the residence and was now a passenger in a black Honda. After visually confirming Nhan was the person sitting in the front passenger seat of the Honda, Officer Hall initiated a traffic stop.

According to the time stamp on Officer Hall's dashboard camera, Officer Hall pulled defendant over at 3:14 p.m. Between 3:16 p.m. and 3:18 p.m., Officer Hall ordered Nhan out of the Honda, handcuffed him, and put him in the back of the patrol car. At 3:22 p.m., Officer Hall asked defendant to step out of the Honda. Officer Hall conducted a brief patdown search of defendant's person and asked defendant for permission to search the Honda. Between 3:22 p.m. and 3:23 p.m., defendant gave Officer Hall permission to search the Honda. Before searching the Honda, Officer Hall put defendant in the back of the patrol car but did not handcuff him. Officer Hall began searching the Honda at 3:23 p.m. At 3:24 p.m., Officer Hall found a white ballast in the trunk of the Honda. Based on his training and experience, Officer Hall recognized the ballast as a device commonly used in the cultivation of marijuana in order to transfer electricity to marijuana grow lights.

Other officers arrived to assist Officer Hall in moving the Honda off the main road and taking defendant and Nhan back to the Sunnyfield Way residence. Defendant and

3

Nhan arrived back at the residence at 3:59 p.m. They remained in the patrol car while officers searched the residence. At 4:20 p.m., defendant was read his *Miranda* rights. He then gave his statement to the police.

After finding the traffic stop was covered by the search warrant and that defendant consented to the search of his car, the trial court ruled on defendant's continued detention, beginning at 3:24 p.m. – after discovery of the ballast: "[I]'m going to find that given the close association that it was clear that . . . defendant was in the home, which is the target of the search warrant, that he was with the person who was the target of the search warrant, that there's a sufficiently close association that when we add into that the presence of a ballast, which while [it] may be innocent, also along with all the other circumstances, supports the close association with . . . defendant and the residence.

"That although the officers' safety and [*sic*] aspect was articulated somewhat at the beginning of Officer Hall's testimony, but this detention, I'm going to find is minimal. The transportation from the stop to the house, I see that the officer saw the ballast at 3:24 . . . and . . . arriv[ed] at the house at 3:59. But that does not -- that 35 minutes does not seem an unreasonable amount [of time] to accomplice [*sic*] that.

"And we're only 21 minutes until there . . . defendant has been removed from the car, taken into the house, given his Miranda Rights and waiver, and then statement is taken at 4:20. So I'm going to find that it is not an unreasonable amount of time that would warrant suppression of that statement."

Defendant subsequently changed his plea and pleaded no contest to unlawfully planting, cultivating, harvesting, drying, and processing marijuana (Health & Saf. Code, § 11358). In exchange for defendant's plea, the remaining count was dismissed and the People agreed defendant would serve 16 months in county jail.

## DISCUSSION

Defendant contends the trial court erred when it denied his motion to suppress the statement he made to law enforcement on February 27, 2013. He concedes the initial

4

stop was lawful but argues the detention lasted longer "than necessary for the officer to evaluate whether or not [defendant] himself should be arrested." We disagree.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; see also *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889].) In order to determine whether defendant's detention meets "the ultimate standard of reasonableness embodied in the Fourth Amendment" (*Michigan v. Summers* (1981) 452 U.S. 692, 699-700; [69 L.Ed.2d 340, 348]), "we balance the extent of the intrusion against the government interests justifying it, looking in the final and dispositive portion of the analysis to the individualized and objective facts that made those interests applicable in the circumstances of the particular detention." (*Glaser, supra*, 11 Cal.4th at p. 365.)

Officer safety during the execution of a search warrant is an important governmental interest justifying the intrusion of a detention under certain circumstances. (*Glaser, supra*, 11 Cal.4th at p. 364.) "When, in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him . . . for the period of time required and in the manner

5

necessary to make those determinations and to protect the safety of all present during the detention." (*Id.* at p. 374.)

The facts are undisputed. Defendant was seen leaving the residence that was the subject of a search warrant, which was then being executed. Defendant drove away with Nhan, who was also subject to the search warrant. The warrant directed the officers to search for marijuana and evidence related to the use, sale, and transportation of marijuana. When defendant was stopped, a stop he concedes was lawful, he consented to a search of his vehicle. A search of defendant's vehicle revealed a ballast in the trunk, an item commonly used in a marijuana growing operation. Thus, by all appearances defendant was "more than a stranger or a casual visitor" to the Sunnyfield Way residence. (See *Glaser, supra*, 11 Cal.4th at p. 365.)

On the other hand, defendant was not held at gunpoint, nothing in the record suggests he was made to sit in a patrol car on a public thoroughfare for the duration of his detention, and while more than a few minutes, the detention was just under an hour, and it was incidental to a search warrant. The detention, therefore, was minimally intrusive. (See *Glaser, supra*, 11 Cal.4th at pp. 367-368 [in determining how intrusive a detention is, courts look to the length of detention, whether the defendant was detained in a public place, and whether the detention was incidental to a search warrant].)

On balance, we conclude it was reasonable for the officers to extend defendant's detention another 59 minutes after the ballast was discovered (including travel time from the traffic stop back to the Sunnyfield Way residence) in order to determine defendant's connection to Nhan and the Sunnyfield Way residence. (See *Glaser, supra*, 11 Cal.4th at p. 374.)

6

DISPOSITION

The judgment is affirmed.



      NICHOLSON     , J.



We concur:



      RAYE        , P. J.



      MAURO       , J.